**In re MASTER KEY Antitrust Litigation.**
**MDL Docket No. 45.**

United States District Court,
D. Connecticut.
June 22, 1971.

PLAINTIFFS' COUNSEL FOR SERVICE OF PAPERS:

Josef D. Cooper, Friedman, Koven, Shapiro, Salzman, Koenigsberg, Specks & Homer, Chicago, Ill., for State of Conn., Civ.No.14147.

Lee A. Freeman, Jr., Chicago, Ill., for State of Ind., Civ.No.14148; Commonwealth of Pa., Civ.No.14191.

Fredric B. Burns, Sager & Burns, Miami, Fla., for State of Fla., Civ.No. 14231; Bermar Construction Corp., Civ. No.14232.

David Berger, Philadelphia, Pa., for City of Philadelphia, Civ.No.14233; Amherst Leasing Corp., Civ.No.14234.

J. Lee Rankin, Corp. Counsel, Law Dept., New York City, Eugene Margolis, New York City, for City of New York, Civ.No.14235.

George C. Mantzoros, Asst. Atty. Gen. in charge of Anti-Monopolies Bureau, New York City, for State of New York, Civ.No.14236.

Frederick D. Steinhardt, Travis, Warren, Nayer & Burgoyne, Michael B. Lewiston, Bodman, Longley, Bogle, Armstrong & Dahling, Detroit, Mich., for Sturdy Homes Co.

Ronald I. Wiseman, Donald Weckstein, Asst. Attys. Gen., Columbus, Ohio, for State of Ohio.

## DEFENDANTS' COUNSEL FOR SERVICE OF PAPERS:

John W. Barnett, Wiggin & Dana, New Haven, Conn., for Sargent and Co. —all cases.

Walter Bates, Arter & Hadden, Cleveland, Ohio, for Eaton, Yale & Towne, Inc.—all cases.

Ralph C. Dixon, Day, Berry & Howard, Hartford, Conn., for Emhart Corp. —all cases.

Charles Donelan, Bowditch, Gowetz & Lane, Worcester, Mass., for Ilco Corp.— all cases.

## RULING ON PLAINTIFFS' MOTION UNDER RULE 37 FOR SANCTIONS AND TO COMPEL FURTHER ANSWERS BY DEFENDANTS EMHART CORPORATION

AND EATON, YALE & TOWNE, INC. TO PLAINTIFFS' INTERROGATORIES—FIRST SET

BLUMENFELD, District Judge.

### I.

The interrogatory answers which are under attack are those filed by defendants Emhart Corporation and Eaton, Yale & Towne, Inc. For the most part, they are the same. In response to Interrogatories Nos. 2, 3, 9, 27, 30, 31 and 46, Eaton has not given a specific answer, but has invoked Rule 33(c) Fed.R.Civ.P. "Option to Produce Business Records."[1] Emhart has done the same in response to Interrogatories Nos. 5, 5(second), 6, 7, 8, 9, 10(b), 23, 31, 38, 43, 45 and 45(a).[2]

A typical example is afforded by Emhart's answer to Interrogatory 5:

"5. Did you enter into any agreement, contract, understanding, plan, or program, formal or informal, written or oral, with any of your distributors with respect to the allocation, division or assignment of customers, territories, and/or markets for the distribution or sale of master key systems and/or extensions to master key systems. If so, for each such agreement, contract, understanding, plan or program, give the following information:

"(a) The distributor with whom it was entered into;

"(b) The date on which it was entered into;

1. Rule 33(c) provides:

"Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, or from a compilation, abstract or summary based thereon, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the rec-

ords from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries."

2. Eaton's objections to all or portions of other interrogatories have been mooted out by its representation that answers thereto have been filed. *See* Brief of Eaton filed June 7, 1971.

"(c) If the agreement, contract, understanding, plan or program was oral, state the terms and provisions thereof;

"(d) If it is embodied or recorded in a document or documents, identify each such document;

"(e) Identify the individuals acting on your behalf and on behalf [of] each distributor; and

"(f) State the period for which the agreement, contract, understanding, plan or program was or is in effect.

"ANSWER

"5. If and to the extent that defendant entered into any agreement, contract, understanding, plan, or program, formal or informal, written or oral, with any of its distributors with respect to the subjects enumerated in this interrogatory, the information requested in this interrogatory is contained in defendant's files maintained at its Berlin, Connecticut, plant. Such files will be made available for inspection by counsel for plaintiff at the Berlin, Connecticut, plant in accordance with Rule 33(c) of the Federal Rules of Civil Procedure."

From the specific references by the defendants to Rule 33(c) in their responses and briefs, they unmistakably contend that their offer to make their files "available for inspection by counsel for the plaintiff" at the defendants' place of business constitutes a sufficient answer to the interrogatories.

## II.

The basic fault with the challenged responses is that they leave the interrogating party to speculate whether an answer can be ascertained from an examination of the files. Thus, the question presented is whether Rule 33(c) permits a party from whom relevant information is being sought to respond by telling his interrogator where he may look for the answer without stating that the answer may be found there.

The fact that one use of the word "may" as defined in the dictionary is "be by chance" furnishes an arguably logical basis for the elliptical response of the defendants. But more than a dictionary is required to understand the meaning of "may" in Rule 33(c). *Cf.* United States v. Correll, 389 U.S. 299, 304 n. 16, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967). "May" has different shades of meaning; e. g. the dictionary notes that it is often used in the sense of "be competent" and that it is frequently substituted for the word *can* when used in this sense. *Cf.* ICC v. J–T Transport Co., 368 U.S. 81, 107, 82 S.Ct. 204, 7 L.Ed.2d 147 (1961) (dissenting opinion of Mr. Justice Frankfurter). Since neither the rulemakers nor the advisory committee have provided an answer to the question, the oft-quoted guidelines laid down by Judge Learned Hand are applicable:

> "There is no more likely way to misapprehend the meaning of language—be it in a constitution, a statute, a will or a contract—than to read the words literally, forgetting the object which the document as a whole is meant to secure. Nor is a court ever less likely to do its duty than when, with an obsequious show of submission, it disregards the overriding purpose because the particular occasion which has arisen, was not foreseen. That there are hazards in this is quite true; there are hazards in all interpretation, at best a perilous course between dangers on either hand; but it scarcely helps to give so wide a berth to Charybdis' maw that one is in danger of being impaled upon Scylla's rocks." Central Hanover Bank & Trust Co. v. Commissioner, 159 F.2d 167, 169 (2d Cir.), cert. denied, 331 U.S. 836, 67 S. Ct. 1518, 91 L.Ed. 1848 (1947).

We start with the proposition that the discovery rules are a "device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to [the] issues. Thus civil trials in the federal courts no longer

need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 389, 91 L.Ed. 451 (1947). This view was given added emphasis in United States v. Procter & Gamble Co., 356 U.S. 677, 682–683, 78 S.Ct. 983, 2 L.Ed. 2d 1077 (1958):

> "Modern instruments of discovery serve a useful purpose, as we noted in Hickman v. Taylor. * * * They together with pretrial procedures make a trial less a game of blind man's buff and more a fair contest with the basic issues and *facts disclosed to the fullest practicable extent.*" [3] (Emphasis added).

■ It would be antipathetic to the spirit of the discovery rules to assume that the newly added Rule 33(c) was intended to diminish the duty of the parties to provide all information requested. Since a respondent is required to answer proper interrogatories, it is not plausible to assume that a response that an answer may (or may not) be found in its records, accompanied by an offer to permit their inspection is sufficient. This is little more than an offer to play the discredited game of blindman's buff at

the threshold level of discovery. The challenged answers furnish no information whatever. Nor can the responses be read as stating that the defendants do not have or cannot obtain the information necessary to answer the interrogatories. If a party cannot furnish information and details it may so state, under oath. *See* Riley v. United Air Lines, Inc., 32 F.R.D. 230, 233–34 (S.D. N.Y.1962), and *see generally,* 4 J. Moore, Federal Practice, ¶ 33.26, at 33–140–33–146 (2d ed. 1970).

■ I conclude that the option afforded by Rule 33(c) is not a procedural device for avoiding the duty to give information. It does not shift to the interrogating party the obligation to find out *whether* sought after information is ascertainable from the files tendered, but only permits a shift of the burden to dig it out once the respondents have specified the records from "where the answer" can be derived or ascertained. If the answers lie in the records of the defendants, they should say so; and, if, on the other side, they do not, they should say that. J. J. Delaney Carpet Co. v. Forrest Mills, Inc., 34 F.R.D. 152, 153 (S.D.N.Y.1963).

The defendants' answers to the interrogatories considered above are insufficient, and the defendants are again [4] ordered to file further answers.

---

3. "The basic philosophy of the present federal procedure is that prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged. The discovery procedure adopted by Rules 26 to 37 enables a party not only to narrow the issues and obtain evidence for use at the trial, but also to discover information about where and how such evidence can be obtained. The scope of discovery has been made very broad and the restrictions imposed upon it are directed chiefly at the use of, rather than the acquisition of, the information discovered." 8 C. Wright & A. Miller, Federal Practice and Procedure, Civil, § 2001, at 15 (1970).

4. Before these cases were transferred from the United States District Court for the Eastern District of Pennsylvania to this court for *multidistrict litigation* proceedings, the defendant Emhart had objected to these same interrogatories on the ground that answering them "would require thousands of hours of work, including extensive searching for old records and correspondence." Another ground of objection was that the answers presented "a task which is too burdensome and beyond the requirements of Rule 33 of the Federal Rules of Civil Procedure." *See* Brief of Emhart's Philadelphia counsel filed July 13, 1970, at 8 and 9. Thereafter, on September 18, 1970, Judge Harold K. Wood, of that court, issued an order "that the defend-

It is premature to decide now that the defendants may not invoke Rule 33(c) if it should later become applicable. Such a ruling must be deferred until, and if, it becomes necessary.

### III.

■ Cryptic answers were given by Emhart to Interrogatory No. 11 relating (a) to whether it made any investigations and (b) if so, (1) the names of the persons interviewed; (2) the dates thereof; and (3) the existence of any memoranda relating thereto. The answer to (a) was "None except by counsel," and to the others: "not applicable." These answers are insufficient. Emhart is also directed to give full and complete answers to Interrogatories Nos. 11, 25 and 40.

### IV.

The plaintiffs may submit to the court for later consideration affidavits in support of their request for an order that the defendants pay reasonable expenses incurred in obtaining this order.

ants shall answer in full and as stated the plaintiffs' first set of interrogatories as well as the plaintiffs' request for the production of documents within 120 days
* * * *."